# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| BROOKS C.C. WILLMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. 2:12-CV-278 |
| | ) |
| PORTER COUNTY, IN, *et al.* | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Partial Motion to Dismiss, filed by Defendants Porter County, Indiana, Porter County Sheriff Department, Sheriff David Lain, Warden John J. Widup, Lt. J. Ryan Taylor, Sgt. Greg Kasten, Sgt. David Cavanaugh, Officer David Lippens, Officer Paul Sciarra, Officer Ron Gaydos, Officer Barbara Candiano, Medical Staffer Dawn Murray, and Medical Staffer Cashawn Walker ("Porter County Defendants"), on November 12, 2012. Also before this Court is Kim House's Motion to Join Defendants' Partial Motion to Dismiss, filed on December 06, 2012. Upon due consideration, the motion to join is **GRANTED.** For the reasons set forth below, the partial motion to dismiss is **GRANTED**. Counts I, II, IV and V of the First Amended Complaint are **DISMISSED**.

BACKGROUND

On July 20, 2012, the Plaintiff, Brooks C.C. Willmon ("Willmon"), filed a Complaint against the Porter County Defendants and Kim House ("House"). According to the Complaint, Willmon was confined at the Porter County, Indiana jail from approximately April 1, 2010, until August 6, 2010.

The Complaint alleged that Willmon, a total paraplegic from the waist down, required a wheelchair for mobility. He also required that his wheelchair be padded and that his bedding be appropriate for prevention of the development of pressure sores. He needed certain medical and sanitary supplies to eliminate, absorb and control bodily wastes. And, he needed prescription medications for both physical and mental health.

Additionally, the Complaint alleged that the jail knowingly accepted prisoners requiring levels of medical care that the jail either could not or would not provide, that jail staff intentionally shredded the padding and cushion of Willmon's wheelchair and refused to either provide a new cushion or allow him to use a new cushion provided by his wife. The Complaint further alleged that the tires of Willmon's wheelchair were intentionally shredded as a punishment and that the jail refused to repair or replace his wheelchair. According to the Complaint, Willmon was

also confined in a padded cell, withdrawn "cold turkey" from his anti-depressant and anti-psychotic medications, and not given these medications while at the jail. Willmon was allegedly restricted access to urinary catheters and adult diapers for extended periods of time and, because of these restrictions, he would soil himself. When he had soiled himself, he was prevented from leaving his cell for meals and he would then be subject to a 23-hour lockdown for failing to leave his cell for a scheduled meal. As a result of the jail's mismanagement of Willmon's conditions, he developed pressure sores and those sores became infected. The Complaint alleged that the acts described above (as well as other acts that have not been mentioned in this Order) were the result of deliberate on-going policies, procedures, customs and practices. The Complaint alleged, pursuant to 42 U.S.C. section 1983, violations of Willmon's Eighth and Fourteenth Amendment rights, the Americans with Disabilities Act, and conspiracy. The Complaint also alleged conspiracy pursuant to 42 U.S.C. § 1985(3) and sought attorneys' fees pursuant to 42 U.S.C. § 1988.

A partial motion to dismiss was filed on September 20, 2012. In response to the motion to dismiss, Willmon filed his First Amended Complaint. The First Amended Complaint contains each of the aforementioned factual allegations and alleges seven separate counts. The instant motion seeks to dismiss only Counts I, II, IV

and V of the First Amended Complaint.[1]

Count I of the First Amended Complaint alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (DE 26 at 20-24). More specifically, it alleges that the jail failed to comply with the ADA design standards set forth in 28 C.F.R. Part 36.401.

Count II alleges that the jail failed to meet the access requirements of the Rehabilitation Act, in violation of 29 U.S.C. § 794. (DE 25 at 25-26). Count II alleges largely the same alleged design defects as Count I. (DE 25 at ¶ 26).

Counts IV and V both allege conspiracy. Count IV is brought pursuant to 42 U.S.C. section 1983 and alleges that the Defendants conspired to violate Willmon's rights under the Fourteenth and Eighth Amendments by subjecting him to cruel and unusual punishment. The First Amended Complaint alleges twenty different ways in which the Defendants allegedly conspired against Willmon. Count V alleges a similar conspiracy in violation of 42 U.S.C. § 1985(3).

Willmon filed a response to the instant motion on December 21, 2012. Willmon concedes that Count V should be dismissed.[2] Willmon

---

[1] Because the instant motion does not seek dismissal of Counts III, VI or VII, those Counts are not discussed in this Order.

[2] Defendants note that disabled persons are not a class protected by 42 U.S.C. § 1985(3). *See D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985). Because Plaintiff concedes that Count V should be dismissed, this Order contains no further discussion

also concedes that, to the extent Counts I and II allege claims related to the physical design of the jail, his allegations are time-barred and should be dismissed. Willmon asserts that, in all other respects, the motion to dismiss should be denied. A reply brief was filed on January 11, 2013. The instant motion is fully briefed and ripe for adjudication.

DISCUSSION

In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff has an obligation under Rule 8(a)(2) to provide the grounds of his entitlement to relief, which requires more than labels and conclusions. *Id.* at 1965. A Rule 12(b)(6) motion to dismiss should be granted if the complaint fails to include sufficient facts to state a claim for relief that is

---

of Count V.

plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level. *Id.* Moreover, a plaintiff may plead himself out of court if the complaint includes allegations that show he cannot possibly be entitled to the relief sought. *Jefferson v. Ambroz*, 90 F.3d 1291, 1296-97 (7th Cir. 1996).


Willmon's ADA and Rehabilitation Act Allegations in Counts I and II

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. In *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998), the Court determined that Title II of the ADA applies to inmates in state prisons.

Section 504 of the Rehabilitation Act is codified at 29 U.S.C. § 794 and provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The requirements of the two statutes are more or less the

same, except that the Rehabilitation Act requires that the program or activity at issue receive Federal financial assistance. *See Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 671-72 (7th Cir. 2012). Accordingly, this Court will consider the ADA and Rehabilitation Act claims together.

Claims under both Title II of the ADA and the Rehabilitation Act brought in a federal court sitting in Indiana are governed by Indiana's two year statute of limitations for personal injury claims. Ind. Code § 34-11-2-4; *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 n.3 (7th Cir. 1996); *Conley v. Village of Bedford Park*, 215 F.3d 703, 710, n.5 (7th Cir. 2000)(noting that a claim brought in federal court under the Rehabilitation Act is governed by the statute of limitations for personal injury claims of the state in which the federal court is sitting). As noted previously, Willmon concedes that all allegations in Counts I and II based on the physical design of the jail are time barred. (DE 34 at 5). Normally, this would be the end of the Court's inquiry, but the parties do not seem to agree as to the scope of the claims in Counts I and II. The Defendants believe that the physical design claims are the only claims alleged in Counts I and II. Plaintiff, however, contends that Counts I and II allege claims based on both discriminatory design and discriminatory acts, and that the claims based on discriminatory acts should not be dismissed. (DE 24 at 2).

Counts I and II of the First Amended Complaint mimic one another closely. In Count I, paragraph 24 provides that "PCJ inmate facilities violate and have violated since opening the provisions of the ADA regarding accessibility by mobility impaired individuals in the following regards" and then sets forth 13 subparagraphs that support that assertion. (DE 25 at ¶ 24). Similarly, paragraph 26 of the First Amended Complaint, found in Count II, alleges that "The PCJ is subject to the federal Rehabilitation Act and has violated the Act by constructing a new jail that fails to meet the access requirements of the Rehabilitation Act regarding the mobility impaired, and engaging in the following other acts or omissions, which are on-going..." (DE 25 at ¶ 26). The First Amended Complaint then sets forth 12 subparagraphs in support of this assertion. Some of those subparagraphs allege acts rather than design defects, including a failure to provide training to personnel on how to assist in transferring mobility impaired patients and making wheelchair-bound inmates wait in medical isolation until last before receiving treatment. The structure of the First Amended Complaint suggests that these acts are the result of the facility not complying with the ADA's design standards or the Rehabilitation Act's access requirements. Accordingly, this Court concurs with the Defendants and finds that Counts I and II, as drafted, allege only claims based on a failure to comply with the ADA's design standards and

the Rehabilitation Act's physical access requirements, respectively.

The acts mentioned in the supporting subparagraphs of Counts I and II of the First Amended Complaint are, at least primarily, based on inadequate medical treatment. As the Defendants point out in their motion, the Seventh Circuit has held that claims for inadequate medical treatment are improper under the ADA. *See Resel v. Fox,* 2001 WL 1654524 ("[A] prison official does not violate the ADA when failing 'to attend to the medical needs of ... disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996)(noting that the plaintiff was complaining about incompetent medical treatment, not being excluded from prison services, programs or activities, and that "[t]he ADA does not create a remedy for medical malpractice."); *Perrey v. Donahue*, 2007 WL 4277621 (N.D. Ind. 2007)(noting that the plaintiff's claim based on denial of access to medical care and treatment was "not an ADA claim" but rather an Eighth Amendment claim). A claim based on discrimination might be cognizable, but Counts I and II do not appear to allege discrimination. Accordingly, this Court finds that Counts I and II must be dismissed in their entirety.

There may be facts alleged in the First Amended Complaint that could support viable claims under the ADA or the Rehabilitation Act other than claims based on failure to comply with the ADA's design standards or the Rehabilitation Act's access requirements. As

currently drafted, this Court does not find that Count I or II of the First Amended Complaint contain any such claims. This Court is not inclined to make Plaintiff's arguments for him. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is not the responsibility of this court to make arguments for the parties."). If, after consideration of the Seventh Circuit's position with regards to ADA claims based on inadequate medical treatment, the Plaintiff feels that an ADA or Rehabilitation Act claim not based on a violation of the ADA's design standards or the Rehabilitation Act's physical access requirements remains viable, he may seek leave to amend his complaint a second time. Any motion for leave to amend should be accompanied by citations to case law demonstrating that allowing the amendment would not be futile. *Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013)("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."); *see also Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir. 1993).

<u>Willmon's claim that Defendants conspired to violate his rights under the Eighth and Fourteenth Amendments</u>

Count IV of the First Amended Complaint alleges that the Defendants:

> conspired to deprive Brooks of his right to competent medical assessment and evaluation, competent medical treatment, prescribed antibiotic therapy, prescribed anti-psychotic

> therapy, necessary sanitary supplies, necessary urinary catheters, appropriate wheelchair cushioning, appropriate anti-pressure sore bedding, repair of his wheelchair destroyed by Jail staff, a safe jail environment, enforcing punitive 23-hour lock downs due to disability, punitive corporal punishment, humiliating treatment of a person with disabilities, and the foregoing denials of service...

(De 25 at ¶ 78). Count IV of the First Amended Complaint further alleges that the Defendants:

> colluded to be deliberately indifferent to the medically obvious need paraplegics such as Brooks' presented for the evaluation, assessment, and treatment of medical needs, pressure sores, urinary tract infections, weight loss, medically necessary antibiotics, catheters, diapers, prescribed anti-psychotic and anti-anxiety medications, and the necessity of providing medically necessary padding and other techniques and procedures to prevent the development of pressure sores.

(DE 25 at ¶ 80).

To prove a conspiracy under section 1983, a plaintiff must show that (1) a state official or private individual reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individuals were wilful participants in joint activity with the State or its agents. *Logan v. Wakins*, 644 F.3d 577, 583 (7th Cir. 2011). The Seventh Circuit has long required plaintiffs to plead something more than bare allegations of conspiracy. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857 (7th Cir. 1999)(holding that a complaint alleging conspiracy but

-11-

lacking an indication of when it was formed, what its terms were, and what role the defendant played did not satisfy Rule 8). This heightened pleading requirement for conspiracy was "a rare example of a judicially imposed requirement to plead facts in a complaint governed by Rule 8." *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009). But then the Court decided *Twombly* and *Iqbal*, and it is it now clear that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Cooney*, 583 F.3d at 971 (citing *Iqbal*, 129 S. Ct. at 1950). The Seventh Circuit in *Cooney* dismissed a conspiracy claim noting that it was detailed in some respects but "bereft of any suggestion, beyond a bar conclusion, that the remaining defendants were leagued in a conspiracy with the dismissed defendants." *Cooney*, 583 F.3d at 971.

In *Roehl v. Marrilees*, the Northern District of Illinois likewise dismissed a conspiracy claim under the standard established in *Iqbal* and *Twombly*. *Roehl v. Merrilees*, No. 11 C 4886, 2012 WL 1192093 (N.D. Ill. April 10, 2012). The complaint at issue in *Roehl* included allegations regarding the parties, purpose and date of the conspiracy but did not allege "facts or circumstances upon which either an express or implied agreement between Defendants could be inferred above the speculative level." *Id.* at *8 (internal quotations omitted). The Court noted that,

even before *Iqbal* and *Twombly*, bare allegations of conspiracy were insufficient, and that, under the new standard, the plaintiff would need to "meet a high standard of plausibility." *Id.; see also Ennerga v. Starns*, No. 10 C 5016, 2012 WL 1899331, *3 (N.D. Ill. May 23, 2012)(dismissing a conspiracy claim under the *Iqbal/Twombly* pleading standard and noting that the conspiracy allegations were conclusory and "completely unsupported by factual allegations."); *Lyttle v. Killakey*, 528 F.Supp.2d 818 (N.D. Ill.2007)(conspiracy claim dismissed where complaint failed "to allege any evidence, circumstantial or direct, that would lead the Court to conclude that the policy adopted by the City eventually led to a conspiracy to arrest [plaintiff].").

Plaintiff responded to the Defendants' argument that Count IV should be dismissed by noting that Count IV incorporates the preceding paragraphs of the First Amended Complaint, and that those paragraphs are "fairly specific as to time, place, and acts." (DE 34 at 6). Plaintiff did not discuss which paragraphs, precisely, provide the time, place and acts that support the alleged conspiracy, leaving it to this Court to guess. Nonetheless, this Court has reviewed the First Amended Complaint in its entirety, and neither Count IV nor the paragraphs preceding it sufficiently allege conspiracy under the *Iqbal/Twombly* standard. The First Amended Complaint alleges repeatedly that the acts taken were the

result of the Defendants' policies, procedure, customs or practice. These allegations, however, do not equate to a conspiracy. The allegations in Count IV itself are that the Defendants "conspired" and "colluded," but the mere use of these terms is no substitute for allegations of facts or circumstances that satisfy the high level of plausibility required under *Iqbal* and *Twombly*. Accordingly, this Court finds that the allegations in Count IV are conclusory and must be dismissed.

CONCLUSION

For the reasons set forth above, Kim House's Motion to Join Defendants' Partial Motion to Dismiss is **GRANTED,** and Defendants' Partial Motion to Dismiss is **GRANTED.** Counts I, II, IV and V of the First Amended Complaint are **DISMISSED**.

**DATED: July 10, 2013**  /s/RUDY LOZANO, Judge
**United States District Court**